IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 14, 2026 Session

**DANIEL JOSEPH WILLIAMS v. TENNESSEE DEPARTMENT OF SAFETY AND HOMELAND SECURITY**

**Appeal from the Circuit Court for Knox County**
**No. 3-271-23      Deborah C. Stevens, Judge**

_____

**No. E2025-00793-COA-R3-CV**

_____

The petitioner filed a petition seeking judicial review of certain interlocutory decisions made by an administrative law judge during forfeiture proceedings conducted by the Tennessee Department of Safety and Homeland Security. The petitioner also raised constitutional issues that had not been raised during the agency proceedings. The trial court determined that it did not possess subject matter jurisdiction to review the interlocutory agency decisions or other constitutional issues raised for the first time in the petition for judicial review. The petitioner has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, P.J., E.S., and VALERIE L. SMITH, J., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellant, Daniel Joseph Williams.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; Jacobs M. Gilbert and Brian Enright, Assistant Attorneys General, for the appellee, Tennessee Department of Safety and Homeland Security.

**OPINION**

I. Factual and Procedural Background

On September 21, 2023, the petitioner, Daniel Joseph Williams, filed a "Petition for Judicial Review from Intermediate Rulings of the Administrative Judge" in the Knox County Circuit Court ("trial court"), naming the Tennessee Department of Safety and

Homeland Security ("the Department") as the respondent. Mr. Williams stated, *inter alia*, that the Department had been "administering forfeiture proceedings against approximately 31 vehicles and $300,000.00 in U.S. Currency" that had been seized from him. The forfeiture proceedings apparently stemmed from Mr. Williams's 2022 indictment by a grand jury in the Sevier County Circuit Court for numerous drug-related offenses.

According to Mr. Williams, the Department's Commissioner and the Secretary of State had appointed "Deputies" and "Administrative Judges" to make decisions that were allegedly the Commissioner's duty to make without those appointed officials having taken "oaths of office required by Tennessee's Constitution Art. X. Sec. 1 and Tennessee's statutes." Mr. Williams stated that in the administrative proceeding, he had filed a motion to dismiss challenging the authority of deputies and administrative law judges who were designated by the Commissioner to make decisions in his case "who had not first taken the required constitutional and statutory oaths of office." Mr. Williams also claimed that he had sought discovery from the Department regarding this issue but that his request had been denied. Mr. Williams contended that the administrative law judge ("ALJ") had denied his pretrial motions to dismiss, wherein he had challenged the authority of the appointed deputies and administrative judges such that he was an aggrieved party "within the meaning of Tenn. Code Ann. § 4-5-322(a)."

In addition, Mr. Williams sought review of the ALJ's decision requiring him to comply with discovery and prove standing to assert a claim to the seized property. Mr. Williams urged that the ALJ should have first required the Department to demonstrate that it had satisfied *State v. Sprunger*, 458 S.W.3d 482, 499-500 (Tenn. 2015), by presenting affirmative proof that it had complied with both the procedural and substantive requirements in the forfeiture statutes. Mr. Williams further asserted that the forfeiture statutes were unconstitutional because they imposed excessive fines without a jury trial. Mr. Williams requested that the ALJ's rulings be reversed and that the forfeiture proceedings be dismissed. Mr. Williams subsequently filed discovery requests seeking admissions, interrogatory answers, and documents from the Department.

On October 20, 2023, the Department filed a motion to dismiss the petition. The Department argued that pursuant to Tennessee Code Annotated § 4-5-322, review of an interlocutory agency decision could only be sought when the petitioner could establish that judicial review of the final agency decision would not provide an adequate remedy. The Department claimed that Mr. Williams had failed to meet this requirement and that his petition should accordingly be dismissed. Subsequently, on November 7, 2023, Mr. Williams filed an amended petition. Mr. Williams clarified that he was raising constitutional objections to the forfeiture statutes and proceedings, including a claim that by invoking his right against self-incrimination when objecting to the Department's discovery requests, he could "lose his constitutionally protected property." Mr. Williams further averred that the Department had acted unlawfully by failing to follow proper procedure when seizing his property.

- 2 -

The following day, Mr. Williams sought leave of the trial court to file another amendment to his petition to plead additional constitutional violations related to excessive fines and double jeopardy. On November 14, 2023, Mr. Williams filed an "Amended, Consolidated and Restated Petition" seeking judicial review. In support, Mr. Williams attached copies of his underlying drug charges and the Department's discovery requests. On January 26, 2024, the trial court entered an order determining that the "Amended, Consolidated and Restated Petition" ("the Petition") would be the operative pleading, that Mr. Williams would file no further amendments, and that the parties would follow a schedule set forth in the order regarding any motion to dismiss and response. The court subsequently entered an order concluding that it was the proper venue for the action pursuant to Tennessee Code Annotated 40-33-213(c).

On March 15, 2024, the Department filed another motion to dismiss. The Department again posited that Mr. Williams had failed to "describe any sort of harm that [he] would suffer if the [ALJ] entertains the proceedings to conclusion" or that his claims "would somehow be unavailable upon judicial review of the final administrative ruling." The Department also argued that Mr. Williams did not maintain a "constitutional or statutory right to be free from choosing to invoke or not invoke the Fifth Amendment right against self-incrimination." The Department thus asked the trial court to dismiss the Petition for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. In turn, Mr. Williams filed a response opposing the motion to dismiss.

On April 30, 2025, the trial court entered an order granting the Department's motion to dismiss. The court explained that as a threshold matter, Mr. Williams bore the burden "of proving this Court's authority to hear this intermediate agency action by establishing facts that show review of a final agency decision would not provide an adequate remedy to [him]." The court expressed that it would consider the facts contained in the Petition as true but not the legal arguments or conclusions.

With regard to Mr. Williams's assertion that immediate review of the agency's ruling was necessary because he would be compelled to produce "protected financial records" under "Tennessee's Financial Records Privacy Act," *see* Tenn. Code Ann. § 45-10-101, *et seq.*, the trial court found that Mr. Williams had failed to allege any facts "describing what manner of protected information [had been] requested, how the protected information [was] subject to the Privacy Act, or what provisions of the Privacy Act [he] relie[d] on." The court thus determined that Mr. Williams had failed to establish that he would sustain injury without immediate review "as to the production of alleged information protected by the Privacy Act." Similarly, the court discerned that a party's choice between invoking his Fifth Amendment right against self-incrimination and risking a permissible adverse inference or providing potentially incriminating evidence would not cause that party an "irreparable injury" in a civil matter, such as a forfeiture action.

- 3 -

The trial court also determined that Mr. Williams "must establish standing to reclaim his seized property under Tenn. Code Ann. § 53-11-201(f)(1), which includes showing his property was acquired in good faith and not used knowingly in violation of drug laws he was indicted under." The court concluded that Mr. Williams had failed to plead facts requiring immediate review of the Department's intermediate rulings and thus had failed to establish that the trial court maintained subject matter jurisdiction. The court accordingly dismissed those claims.

In addition to the above rulings, the trial court dismissed Mr. Williams's constitutional challenges to various statutes and rules, asserting that because Mr. Williams had presented these challenges for the trial court's initial consideration, there was no agency decision for the court to review. Relying upon *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446 (Tenn. 1995), the court determined that the challenges would have to be brought pursuant to Tennessee Code Annotated § 4-5-223 or § 4-5-322 following a final agency ruling, which Mr. Williams had failed to do. The court alternatively determined that because Mr. Williams's challenges to the intermediate agency decisions were being dismissed for lack of subject matter jurisdiction, the court also lacked subject matter jurisdiction to hear any additional constitutional challenges. The court therefore dismissed Mr. Williams's Petition without prejudice. Mr. Williams timely appealed.

## II. Issues Presented

Mr. Williams presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by determining that it did not have subject matter jurisdiction to adjudicate whether deputies and administrative law judges had acted unlawfully in this matter by failing to take their constitutional oaths of office.

2. Whether the trial court erred by concluding that it did not have subject matter jurisdiction to provide judicial review of the ALJ's ruling compelling discovery.

3. Whether the trial court erred by limiting consideration of its subject matter jurisdiction to whether Mr. Williams would suffer irreparable injury if he waited for a final agency decision and by failing to consider *Richardson*, 913 S.W.2d 446, and Tennessee Rule of Appellate Procedure 9(a).

4. Whether the trial court erred by misapplying *Richardson* and denying Mr. Williams judicial review of his constitutional challenges.

5. Whether the trial court erred by concluding that it did not have subject matter jurisdiction to consider (1) Mr. Williams's claim that Tennessee Code Annotated § 53-11-201(f)(1) was facially unconstitutional and (2) Mr. Williams's claim that he was entitled to a hearing pursuant to *Sprunger*, 458 S.W.3d 482.

6. Whether the trial court erred in concluding that Mr. Williams would have an adequate remedy after a final agency decision on the merits regarding his claims of erroneous legal rulings and constitutional challenges to the forfeiture statutes.

7. Whether the trial court erred by affirming the ALJ's decision to compel Mr. Williams to provide extensive discovery to the Department while criminal charges were pending against him related to the same underlying issue.

8. Whether the trial court erred by failing to provide Mr. Williams the protection of continuing the forfeiture proceedings until after the criminal charges were adjudicated.

9. Whether the trial court had provided similarly situated persons whose property was subject to forfeiture a jury trial as provided for in the Tennessee Constitution, Article I, Section 6.

10. Whether the trial court erred by failing to apply *Timbs v. Indiana*, 139 S. Ct. 681 (2019), to determine that it had subject matter jurisdiction to consider Mr. Williams's constitutional claims.

11. Whether the trial court erred by dismissing Mr. Williams's constitutional challenges without analysis, findings of fact, or conclusions of law.

### III. Standard of Review

Mr. Williams is appealing the trial court's dismissal, for lack of subject matter jurisdiction, of his Petition seeking judicial review of interlocutory administrative orders. "Subject matter jurisdiction involves a court's lawful authority to adjudicate a particular controversy." *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)). The trial court's subject matter jurisdiction to review an administrative interlocutory order is conferred by the Tennessee Uniform Administrative Procedures Act ("UAPA"), specifically Tennessee Code Annotated § 4-5-322(a)(1), which provides:

A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable <u>if review of the final agency decision would not provide an adequate remedy</u>.

(Emphasis added.)

Having found that review following a final agency decision would provide an adequate remedy and that it therefore did not possess subject matter jurisdiction, the trial court granted the Department's motion to dismiss Mr. Williams's Petition pursuant to Tennessee Rule of Civil Procedure 12.02(1). Our consideration of the correctness of the trial court's conclusion in this regard is *de novo*. *Hyundai Motor Am. Tenn. Motor Vehicle Comm'n*, No. M2015-01411-COA-R3-CV, 2016 WL 7486362, at *3 (Tenn. Ct. App. Dec. 30, 2016). We also review questions of law, including those of subject matter jurisdiction and proper construction of a statute, *de novo* with no presumption of correctness. *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436, 446 (Tenn. 2012); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000).

IV. Challenge to Trial Court's Subject Matter Jurisdiction

A Tennessee Rule of Civil Procedure 12.02(1) motion to dismiss may be based on either a facial or a factual challenge to subject matter jurisdiction. *Church of God in Christ, Inc. v. L.M. Haley Ministries, Inc.*, 531 S.W.3d 146, 160-61 (Tenn. 2017). In this case, the trial court found that the Department had presented its challenge to subject matter jurisdiction as solely a facial challenge. The trial court thus explained that it would review the factual allegations in the complaint to determine whether Mr. Williams had stated facts demonstrating that "review of a final agency decision would not provide an adequate remedy" to him. *See* Tenn. Code Ann. § 4-5-322(a)(1).

Our Supreme Court has considered the question of whether the distinction between facial and factual challenges to subject matter jurisdiction should be abolished in Tennessee, ultimately holding that the distinction should remain in place. *Church of God in Christ*, 531 S.W.3d at 161 ("This distinction has been adopted by a majority of state and federal courts, 5B Federal Practice & Procedure Civ. § 1350, and remains helpful in analyzing challenges to subject matter jurisdiction, where it is applied properly."). In so holding, the Court explained the facial-factual distinction as follows:

> In <u>Redwing</u>, this Court addressed the distinction stating, "[l]itigants may take issue with a court's subject matter jurisdiction using either a facial challenge or a factual challenge." 363 S.W.3d at 445. A facial challenge attacks the complaint itself and asserts that the complaint, considered as a whole, fails

- 6 -

to allege facts showing that the court has subject matter jurisdiction to hear the case. *Id.* at 445-46. When evaluating a facial challenge to subject matter jurisdiction, a court limits its consideration to the factual allegations of the complaint and considers nothing else. *Id.* The court presumes the factual allegations of the complaint are true. If these factual allegations establish a basis for the court's exercise of subject matter jurisdiction, then the court must uncritically accept those facts, end its inquiry, and deny the motion to dismiss. *Id.*; see also Staats v. McKinnon, 206 S.W.3d 532, 542-43 (Tenn. Ct. App. 2006); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Thus, when evaluating facial challenges to subject matter jurisdiction, courts are to utilize the familiar analytical framework that applies to motions to dismiss for failure to state a claim. McKinnon, 206 S.W.3d at 543.

In contrast, factual challenges to subject matter jurisdiction do not attack the allegations of the complaint as insufficient. Id. at 543. Rather, a factual challenge admits that the alleged facts, if true, would establish subject matter jurisdiction, but it attacks the sufficiency of the evidence to prove the alleged jurisdictional facts. Redwing, 363 S.W.3d at 446; McKinnon, 206 S.W.3d at 543. When resolving a factual attack on subject matter jurisdiction, a court may consider matters outside the pleadings, such as affidavits or other documents. Anderson [v. Watchtower Bible & Tract Soc'y of New York, Inc.], [No. M2004-01066-COA-R9-CV,] 2007 WL 161035, at *32 n.23 (Tenn. Ct. App. Jan. 19, 2007); see also Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990); Hutterville Hutterian Brethren, Inc. v. Waldner, 791 N.W.2d 169, 174 (S.D. 2010); South v. Lujan, 336 P.3d 1000, 1003-1004 (N.M. Ct. App. 2014). Furthermore, motions challenging subject matter jurisdiction are not converted to summary judgment motions when matters outside the pleadings are considered or when disputes of material fact exist. Anderson, 2007 WL 161035, at *32 n.23; see also McKinnon, 206 S.W.3d at 543 (citing Chenault v. Walker, 36 S.W.3d 45, 55-56 (Tenn. 2001)). Rather, courts presented with such motions must weigh the evidence, resolve any factual disputes, and determine whether subject matter jurisdiction exists. Anderson, 2007 WL 161035, at *32 n.23; Hutterville Hutterian Brethren, Inc., 791 N.W.2d at 175 (stating that, when a factual attack is mounted on subject matter jurisdiction, "the court must also weigh the evidence and resolve disputed issues of fact affecting the merits of the jurisdictional dispute"); Osborn, 918 F.2d at 729-30 (agreeing with the rule adopted by a majority of the federal circuit courts of appeal that, when a factual challenge to subject matter jurisdiction is mounted, the court may resolve disputed issues of material fact and decide the merits of the jurisdictional issue); 5B Charles A. Wright et al., Federal Practice and Procedure § 1350 & n.47 (3d ed. Supp. 2017) . . . . The trial court may hold

- 7 -

an evidentiary hearing limited to the question of subject matter jurisdiction if necessary to resolve jurisdictional factual disputes. Arbaugh v. Y&H Corp., 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[I]f subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own."); see also Osborn, 918 F.2d at 730; Hutterville Hutterian Brethren, Inc., 791 N.W.2d at 175. Regardless of the manner used, the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over the case. McKinnon, 206 S.W.3d at 543 (citing Chenault, 36 S.W.3d at 56).

*Id.* at 160-61.

In its motion to dismiss, the Department asserted the following concerning its challenge to the trial court's subject matter jurisdiction:

To determine subject matter jurisdiction in this case the Court must answer a single question. Does the Petition for Review allege facts that show review of the final agency decision would not provide an adequate remedy? *Mosley v. City of Memphis*, No. W2019-00199-COA-R3-CV, 2019 WL 6216288, at *4 (Tenn. Ct. App. Nov. 21, 2019) ("[T]he UAPA provides that certain preliminary, procedural or intermediate agency actions or rulings may be immediately reviewable if review of the final agency decision would not provide an adequate remedy."); *State ex rel. Com'r of Dep't of Transp. v, Thomas*, 336 S.W.3d 588, 602 (Tenn. Ct. App. 2010) ("A person aggrieved by an agency adjudication, *i.e.*, decision in a contested case, may obtain judicial review of the decision *only* under the UAPA."); *Heredia v. Gibbons*, No. M2016-02062-COA-R3-CV, 2019 WL 3216623, at *4 (Tenn. Ct. App. July 17, 2019) ("'We are required to construe the allegations of the complaint in plaintiff's favor, and accept the allegations of fact as true,' the same is not true for 'inferences to be drawn from the facts or legal conclusions set forth in the complaint.'").

Ergo, the Department clearly mounted a facial challenge to the trial court's subject matter jurisdiction. We will review the trial court's determinations regarding its subject matter jurisdiction *de novo* with no presumption of correctness. *Redwing*, 363 S.W.3d at 446.

V. Issue Regarding Self-Incrimination

First, Mr. Williams raises an overarching issue regarding the forfeiture proceedings, which is intertwined with his other arguments concerning the ALJ's rulings. Mr. Williams posits that by requiring him to prove standing to file a claim to recover the seized property, including proving good faith ownership of the property and a lack of knowledge that the property was being used in violation of the state's drug laws, the trial court violated his

Fifth Amendment privilege against self-incrimination. This issue underscores Mr. Williams's challenge to the ALJ's rulings with respect to compelling him to comply with discovery. It also provides the basis for his various arguments by which he seeks to demonstrate that any remedy following a final order would be inadequate in order to establish that the trial court maintained subject matter jurisdiction to consider the ALJ's interlocutory rulings. *See* Tenn. Code Ann. § 4-5-322(a)(1). Because this issue impacts many of Mr. Williams's other postulates, we will consider it first.

Pursuant to the forfeiture statues applicable to the seizure of property in conjunction with a seizure of narcotic drugs or marijuana, *see* Tenn. Code Ann. § 53-11-201, *et seq.*, a claimant who wishes to contest the forfeiture is required to file a written claim with the applicable agency, requesting a hearing and stating the person's interest in the seized property as well as filing an appropriate bond. Tenn. Code Ann. § 53-11-201(c)(1), (2) (West August 14, 2008, to current). Tennessee Code Annotated § 53-11-201 further provides:

> (f)(1) Whenever, in any proceeding under this section, a claim is filed for any property seized, as provided in this section, by an owner or other person asserting the interest of the owner, the commissioner shall not allow the claim unless and until the claimant proves that the claimant:
>
> (A) Has an interest in the property, which the claimant acquired in good faith; and
>
> (B) Had at no time any knowledge or reason to believe that it was being or would be used in violation of the laws of the United States or of the state relating to narcotic drugs or marijuana.

When a claimant files a properly supported claim pursuant to this statute, the commissioner is required to set a hearing date for the claim. Tenn. Code Ann. § 53-11-201(d)(1)(a). At that hearing, "the state shall have the burden of proving by a preponderance of the evidence that the seized property was of a nature making its possession illegal or was used in a manner making it subject to forfeiture under this chapter[.]" Tenn. Code Ann. § 53-11-201(d)(2). As such, this statutory scheme contemplates that a claimant's proof of standing must precede the contested hearing at which the Department bears the burden of proof regarding the propriety of the forfeiture. *See Tubbs v. Long*, 610 S.W.3d 1, 13 (Tenn. Ct. App. 2020). ("[W]e determine that the initial burden rests with the forfeiture claimant to demonstrate that she has standing to contest the forfeiture at issue.").

Mr. Williams argues that by placing this initial burden of proof upon him to demonstrate his ownership of the property at issue and knowledge regarding its use, his Fifth Amendment right against self-incrimination will be irretrievably violated. He claims,

without sufficient factual explanation, that he will be required to either (1) produce potentially incriminating information and protected financial records to prove standing and comply with the requirements of the statute for filing a claim or (2) invoke his Fifth Amendment right and risk a negative inference being drawn. As such, he urges that his compliance with the statute will result in compulsory incrimination no matter which option he chooses. We disagree.

Forfeiture proceedings are civil in nature. *See Sprunger*, 458 S.W.3d at 493; *Richardson*, 913 S.W.2d at 449. Our Supreme Court has held that the Fifth Amendment's protections are applicable in a civil matter and that

> the trier of fact may draw a negative inference from a party's invocation of the Fifth Amendment privilege in a civil case only when there is independent evidence of the fact to which a party refuses to answer by invoking his or her Fifth Amendment privilege. In instances when there is no corroborating evidence to support the fact under inquiry, no negative inference is permitted.

*Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 506 (Tenn. 2012).

Here, Mr. Williams has not alleged facts that demonstrate how his proof of standing or compliance with the requirements of § 53-11-201 for filing a claim, which include good faith ownership and lawful use of the property at issue, will require the disclosure of potentially incriminating or protected information. In addition, Mr. Williams has not alleged facts to show that he would be subjected to a negative inference if he did invoke his Fifth Amendment privilege or that there exists "independent evidence of the fact to which [he] refuses to answer." Mr. Williams implies that if he were to invoke the privilege, the resultant negative inference would likely prevent him from recovering the seized property. However, this inference does not support his argument that immediate review of the ALJ's interlocutory rulings was necessary. *See In re George Nichopoulos, M.D. v. State of Tenn. Bd. of Med. Examiners*, No. 01A01-9411-CH-00534, 1995 WL 145978, at *2 (Tenn. Ct. App. Apr. 5, 1995) (explaining that "speculative damages based on nothing more than apprehension that the final outcome of administrative proceedings will be prejudicial" were insufficient to show that review of a final agency decision would not provide an adequate remedy, even when the agency decision "is questioned on constitutional grounds").

Mr. Williams propounds that the trial court should have stayed the forfeiture proceedings pending the conclusion of his criminal proceedings to keep any information he might disclose in the civil proceedings from being used against him in the criminal action or to avoid a negative inference from being drawn if he invokes the privilege. However, this Court rejected a similar argument in *Rachels v. Steele*, 633 S.W.2d 473, 476 (Tenn. Ct. App. 1981), stating that "the defendant cannot be free from conflicting concerns, and . . . must weigh the relative advantages of silence and explanation." (quoting *U.S. v.*

*White*, 589 F.2d 1283, 1287 (5th Cir. 1979)).  Mr. Williams has failed to show that immediate review of this issue is necessary because review of a final agency decision concerning this issue would not provide an adequate remedy.  *See* Tenn. Code Ann. § 4-5-322(a)(1).

## VI.  Review of ALJ's Rulings

Mr. Williams sought immediate review in the trial court regarding three of the ALJ's rulings concerning motions he had filed:  (1) whether the forfeiture proceedings were invalid because the ALJ and other designees had not taken a constitutional or statutory oath of office; (2) whether the Department should have been required to first demonstrate compliance with *Sprunger*, 458 S.W.3d at 499, before Mr. Williams was required to demonstrate his standing; and (3) whether the ALJ erred in determining that Mr. Williams had failed to establish standing to assert a claim to the seized property.  We will address each of these issues in turn.

### A.  Oath of Office

Mr. Williams contends that the ALJ should have granted his motion to dismiss the forfeiture proceedings because the ALJ and other Commissioner's designees had acted in the proceedings without first having taken a constitutional or statutory oath of office.  The ALJ apparently denied Mr. Williams's motion seeking dismissal predicated on that argument, and Mr. Williams stated in the Petition that "unless [the trial court] considers this constitutional question, the [ALJ] will continue to require discovery of privileged information from Williams . . . in any final order, thereby denying Wiliams an effective remedy on this Oath issue[.]"

Presuming the factual allegations of the Petition to be true, *see Church of God in Christ*, 531 S.W.3d at 160-61, we disagree with Mr. Williams's postulate that review of a final agency decision concerning this issue would not provide an adequate remedy.  *See* Tenn. Code Ann. § 4-5-322(a)(1).  Pursuant to § 4-5-322(h), the reviewing court may reverse or modify the agency decision if "the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are," *inter alia*, "[i]n violation of constitutional or statutory provisions," which is precisely what Mr. Williams alleges here.

Regarding the oath issue itself, we note that this Court has previously ruled that neither Tennessee's Constitution nor its statutes require ALJs or other Commissioner's designees to take an oath before serving in that capacity.  *See Patterson v. Tenn. Dep't of Safety & Homeland Sec.*, No. M2022-00740-COA-R3-CV, 2025 WL 473547, at *14 (Tenn. Ct. App. Feb. 12, 2025) ("We simply find no basis for concluding that the Tennessee Constitution imposes or the Tennessee General Assembly has statutorily imposed an oath requirement upon administrative law judges or Designees.").  Assuming, *arguendo*, that

Mr. Williams chooses to argue that *Patterson* was somehow wrongly decided, he would still be afforded that opportunity after a final agency decision in this matter. *See, e.g.*, *Applied Underwriters Captive Risk Assurance Co., Inc. v. Tenn. Dep't of Com. & Ins.*, No. M2024-01239-COA-R3-CV, 2025 WL 2206818, at *7 (Tenn. Ct. App. Aug. 4, 2025) (noting that an agency decision subject to *de novo* review "would be afforded respect but not a presumption of correctness); *In re George Nichopoulos, M.D.*, 1995 WL 145978, at *2 (explaining that "[a]ttempts to enjoin administrative hearings because of a supposed or threatened injury, and thus to obtain judicial relief before the prescribed administrative remedy has been exhausted, have been held to be contrary to the long-settled rule of judicial administration."). Accordingly, we agree with the trial court that Mr. Williams failed to demonstrate that review of a final agency decision concerning this issue would not provide an adequate remedy. *See* Tenn. Code Ann. § 4-5-322(a)(1).

### B. Compliance with *State v. Sprunger*

Mr. Williams next takes issue with the ALJ's purported failure to require the Department to comply with the requirements of *Sprunger*, 458 S.W.3d at 499, by presenting affirmative proof that the Department had satisfied both the procedural and substantive requirements of the forfeiture statutes. Mr. Williams argues that the ALJ should have compelled demonstration of the Department's compliance with *Sprunger*'s requirements before requiring Mr. Williams to demonstrate that he maintained standing to assert a claim to the seized property.

In *Sprunger*, our Supreme Court reviewed the requirements of the general forfeiture statutes[1] in great detail, ultimately ruling that (1) the governmental entity seeking forfeiture of property had to present affirmative proof that it had complied with the procedural and substantive requirements found in the statutes and (2) the forfeiture statutes should be strictly construed. *See id.* However, the *Sprunger* Court also recognized that a property owner who wished to contest the forfeiture of his or her property would need to file a written claim with the applicable agency, requesting a hearing and stating the person's interest in the seized property as well as filing an appropriate bond. *See id.* at 497. As the *Sprunger* Court noted, the "claimant's compliance with the required [statutory] procedures then entitle[d] him or her to a contested hearing before the agency under the [UAPA]." *Id.* The High Court further clarified that "[a]t the contested administrative hearing, the State must prove by a preponderance of the evidence that the property at issue is subject to forfeiture." *Id.* at 497-98.

Rather than the general forfeiture statutes analyzed in *Sprunger*, Mr. Williams's forfeiture proceedings were based on Tennessee Code Annotated § 53-11-201, the forfeiture statute applicable to property seized due to alleged violations of state laws concerning narcotic drugs or marijuana. As previously explained, § 53-11-201(f)(1)

---

[1] *See* Tenn. Code Ann. § 40-33-201, *et seq.*

- 12 -

requires that a claimant prove good faith ownership of and knowledge of the lawful use of his or her property before proceeding with a claim to recover the seized property. As such, this Court has previously concluded that under § 53-11-201, the claimant bears the initial burden to establish standing before the claim may proceed to hearing. *See Tubbs*, 610 S.W.3d at 13 ("[W]e determine that the initial burden rests with the forfeiture claimant to demonstrate that she has standing to contest the forfeiture at issue.").

Even considering Mr. Williams's general argument that § 53-11-201 imposes an undue burden on him, he would still be afforded the opportunity for full review of such issues after a final agency decision in this matter. *See, e.g.*, *Applied Underwriters Captive Risk Assurance Co., Inc.*, 2025 WL 2206818, at *7 (noting that an agency decision subject to *de novo* review "would be afforded respect but not a presumption of correctness); *In re George Nichopoulos, M.D.*, 1995 WL 145978, at *2 (explaining that "speculative damages based on nothing more than apprehension that the final outcome of administrative proceedings will be prejudicial" were insufficient to show that review of a final agency decision would not provide an adequate remedy, even when the agency decision "is questioned on constitutional grounds"). Accordingly, we agree with the trial court's determination that Mr. Williams failed to demonstrate that review of a final agency decision concerning this issue would not provide an adequate remedy. *See* Tenn. Code Ann. § 4-5-322(a)(1).

### C. Standing

Mr. Williams also argues that the ALJ erred in determining that Mr. Williams had failed to establish standing to assert a claim to the seized property based on the documents he submitted. This is a question of fact reviewable on judicial review pursuant to a preponderance of the evidence standard. *See Tubbs*, 610 S.W.3d at 7. Mr. Williams has therefore failed to demonstrate that judicial review following a final agency decision concerning this fact-based inquiry would not provide an adequate remedy. *See* Tenn. Code Ann. § 4-5-322(a)(1).

### VII. Constitutional Issues Not Raised During Administrative Proceedings

Mr. Williams presented several allegations in the Petition regarding purported violations of his constitutional rights, including the ALJ's alleged failure to recognize the forfeiture proceedings as "quasi-criminal," that were either not raised during the administrative proceedings or never adjudicated by the ALJ. Mr. Williams relies on our Supreme Court's ruling in *Richardson*, 913 S.W.2d at 458-59, as standing for the proposition that the trial court maintained subject matter jurisdiction to adjudicate certain newly raised constitutional issues because the *Richardson* Court had concluded that such issues were not required to be raised during the administrative proceedings.

In *Richardson*, the Supreme Court was asked to determine whether a trial court was authorized under the UAPA to resolve constitutional issues that had not been addressed in "the administrative order under review." *See id.* at 452. However, the *Richardson* initial administrative order under review was a final order.[2] *See id.* at 460 (explaining that "the agency's declaratory order was a final order subject to judicial review in the Chancery Court[.]"). The *Richardson* Court addressed the types of constitutional issues the agency could resolve versus the types of constitutional questions that were required to be resolved by the court, determining that (1) an administrative tribunal cannot determine the facial constitutionality of a statute, (2) an administrative tribunal can adjudicate an "as applied" challenge to the constitutionality of a statute or any challenge to the constitutionality of an agency rule, and (3) an administrative tribunal can address procedural constitutional questions. *Id.* at 454-55.

The *Richardson* Court then discussed whether the trial court, upon judicial review of the agency decision pursuant to Tennessee Code Annotated § 4-5-322, could rule on these constitutional issues if the issues were not raised during the agency proceedings. *See id.* at 456. The Court stated that because an administrative agency "has no authority under Tennessee law to consider the constitutionality of a statute, the agency must refuse to address facial constitutional challenges raised in contested case proceedings." *Id.* The Court further explained:

> We see no good reason to require that parties raise facial constitutional challenges before agencies which lack the power to resolve the issue. The law should not require one to perform useless and futile acts.
>
> * * *
>
> [T]he party may challenge the constitutionality of a statute regardless of whether it was raised at the agency level.

*Id.* at 456-57.

Concerning a challenge to the constitutional application of a statute or the constitutionality of an agency rule, the *Richardson* Court held:

> [T]he legislature specifically authorizes the chancery court to reverse or modify the agency decision if the party's rights have been prejudiced by a violation of constitutional or statutory provisions. Tenn. Code Ann. § 4-5-

---

[2] A second order from the administrative agency was also the subject of judicial review, but the opinion does not address whether that order was considered final. Instead, the chancery court performing judicial review found that the second petition was barred by *res judicata*, and the Supreme Court agreed. *See Richardson*, 913 S.W.2d at 461.

322(h)(1) (1991 Repl. & 1995 Supp.). This supports a conclusion that the issues need not be raised during the agency proceeding. In addition, practical considerations convince us that the failure to raise a constitutional challenge during an agency proceeding should not preclude the chancery court's consideration. First, agencies employ diverse procedures with varying degrees of formality. An administrative judge or hearing officer may, with the agreement of the parties, conduct all or part of the hearing by telephone, television, or other electronic means. Tenn. Code Ann. § 4-5-312 (1991 Repl.). The party charged may or may not be represented by counsel. In some instances, the fact that an agency has exceeded its authority may not be apparent until the agency has issued its final order. To prohibit a party from raising constitutional issues in the chancery court which were not addressed at the agency level could prevent an aggrieved party from having a full and fair judicial hearing on an alleged clear violation of a constitutional right.

Secondly, administrative agencies may be ill-equipped to rule on constitutional issues. Although agency personnel have considerable expertise on the subject matter which the legislature has delegated to the agency, board members and other agency fact-finders are less likely to have training in constitutional law sufficient to enable an appropriate resolution of the issues.

Finally, the importance of correctly resolving constitutional issues suggests that constitutional issues should rarely be foreclosed by procedural technicalities. *Veach v. State*, 491 S.W.2d 81, 83 (Tenn. 1973). Certainly, issues of constitutionality should not first surface on appeal, *see Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983), but the significant procedural and substantive differences between chancery court review of an agency decision under the Administrative Procedure Act and appeals from final judgments of trial courts under Rule 3, Tennessee Rules of Appellate Procedure requires a more flexible approach in the former.

Based on the plain language of the Administrative Procedures Act and the policy and practical principles discussed above, we hold that the failure to contest the constitutionality of a statute as applied or the constitutionality of an agency rule does not prevent a party from raising those issues upon judicial review. However, we note that in most instances, a party may save considerable time and expense by raising the issue through a declaratory order proceeding or other appropriate pleading.

*Id.* at 457 (other internal citations omitted).

Finally, with regard to an issue of the constitutionality of an agency's procedure, the *Richardson* Court clarified that although "[o]bjection at the agency level will allow incorrect procedures to be eliminated," those issues may also be addressed for the first time on judicial review pursuant to Tennessee Code Annotated § 4-5-322. *Id.* The Court summarized its holdings by stating:

> In summation, although an agency has no authority to determine the constitutionality of a statute, an agency may rule on constitutional challenges to the application of a statute, to a rule, and to procedures used in a contested case proceeding. Nevertheless, the failure to raise these constitutional issues before the agency will not preclude a party in a contested case from raising the issue for the first time upon judicial review.
>
> Parties to contested case proceedings may challenge the constitutionality of a statute or a rule, either facially or as applied, by seeking a declaratory order from the agency pursuant to Tennessee Code Annotated Section 4-5-223. If the agency refuses to rule on the issue, as it must if the challenge is to the facial constitutionality of a statute, then the party may petition the chancery court for a declaratory judgment pursuant to Section 4-5-224. . . .
>
> Parties may also raise constitutional issues through the judicial review of a final agency order or, when appropriate, through the review of an interlocutory order. Tenn. Code Ann. § 4-5-322 (1991 Repl. & 1995 Supp.). During chancery court review of a final agency order, parties may raise constitutional challenges to statutes or rules, challenges to the application of statutes or rules, and challenges to agency procedures, regardless of whether the issue was raised at the agency level.

*Id.* at 458.

Mr. Williams urges that *Richardson* supports the trial court's exercise of its subject matter jurisdiction pursuant to Tennessee Code Annotated § 4-5-322 to rule upon his constitutional issues in the first instance because those issues were not required to be raised before or adjudicated by the agency. However, *Richardson* did not instruct that raising constitutional issues during agency proceedings would establish a guaranteed basis for invoking the trial court's jurisdiction to review an interlocutory order. Although the *Richardson* Court recognized that constitutional issues could be raised during judicial review of a "final agency order or, <u>when appropriate</u>, through the review of an interlocutory order," *see id.* (emphasis added), the Court did not hold that constitutional issues raised regarding agency proceedings automatically demonstrated that review of a final agency decision concerning those issues would not provide an adequate remedy. *See* Tenn. Code Ann. § 4-5-322(a)(1).

In this case, when considering Mr. Williams's constitutional issues that were raised for the first time during his Petition for judicial review of interlocutory rulings made by the ALJ, the trial court stated:

> While *Richardson* does further explain what types of challenges may be brought for initial consideration in front of this Court, it does not allow a claimant to bypass the jurisdictional requirements of Tenn. Code Ann. § 4-5-322(a)(1) for judicial review of intermediate agency decisions. []
>
> Therefore, [Mr. Williams's] constitutional challenges cannot stand where they are not based upon (1) a final agency decision or (2) an intermediate agency ruling or decision for which "review of the final agency decision would not provide an adequate remedy." Tenn. Code Ann. § 4-5-322(a)(1).

We agree with the trial court's reasoning. Mr. Williams has failed to demonstrate that review of a final agency decision concerning this issue would not provide an adequate remedy. *See* Tenn. Code Ann. § 4-5-322(a)(1).

Mr. Williams contends that the trial court improperly focused on whether he would suffer an "irreparable injury" if judicial review of the administrative interlocutory order did not proceed. Although we recognize that the trial court did use this phrase to describe the standard under § 4-5-322 as an alternative to the statutory standard (that review of the final agency decision would not provide an adequate remedy), the trial court clearly understood the standard and ultimately referred back to the statutory language when making its determinations regarding Mr. Williams's issues. In a similar circumstance, this Court has previously held that the trial court did not apply an improper standard when it cited the standard set forth in § 4-5-322, recognized that "irreparable injury" was an example of an injury that would render the remedy inadequate, and ultimately addressed the adequacy of the remedy as to the petitioners' concerns. *See Applied Underwriters Captive Risk Assurance Co., Inc.*, 2025 WL 2206818, at *10.

Mr. Williams also advances the position that the trial court should have considered the criteria listed in Tennessee Rule of Appellate Procedure 9 regarding whether review of the final agency decision would provide an adequate remedy. However, Mr. Williams presents no authority supporting this argument or justifying the trial court's application of an appellate rule of procedure to determine the adequacy of review after a final agency order pursuant to § 4-5-322. We determine this argument to be without merit.

## VIII.  Conclusion

For the foregoing reasons, we affirm the trial court's determination that it lacked subject matter jurisdiction to review the issues raised in the Petition.  We remand this matter to the trial court for collection of costs assessed below.  Costs on appeal are assessed to the appellant, Daniel Joseph Williams.


s/ Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE